Good morning. Nick DiPenno for Appellant. May it please the Court, the government in their brief, and I presume this morning, wants to talk about kickbacks, but I want to talk about bribes. And at times they may be the same, but in this case, Your Honors, they're not. I think the federal sentencing guidelines are just fine when it comes to punishment and restitution. It punishes people for their crimes, and it pays people restitution when they are entitled to it. For punishment, it enhances for drug quantities, for the number of aliens you smuggle, for the sophistication of the crime, and the monies in the swindle. And that's when it comes to punishment. But when it pays victims for restitution, I believe it's a separate, totally different animal. Kickbacks allow the courts to order restitution, and that's why you have cases like Vahela and Gamma Tech. Losses were proven to a certain degree, as seen on page 736 of Vahela and page 926 of Gamma Tech. The phrases, however, by the court in this case, in quotes, that Colton lost something, in quotes again, we have to assume they got some kind of an advantage comparable to that amount, takes the square recited words from those two cases and tries to squeeze them into this round bribery case that I think you have before you. To what extent may we consider in ordering restitution disgorgement of the ill-gotten proceeds from the defendant's criminal behavior? It seems to me that if we accept your argument, we are by necessity permitting the defendant to hang on to some or all of the money that he illegally obtained by virtue of his position as an elected official in this case. And why is it improper for the court to order him to disgorge that under a restitution order? Because you're going to have to call it something different than restitution, as I read the federal sentencing guidelines, and I find no case, California or federal, that allows the government to even proffer to the court that you disgorge from a public official monies that he got from some unjust enrichment or disgorgement from... Why doesn't the court in sentencing a convicted defendant have that power inherently as part of its ability to do justice in a criminal case? Don't they do it in the form of punishment as opposed to taking money from him? Well, I suppose we could do it by way of imposing... A fine? A fine, although as you've pointed out, the guidelines impose a restriction on the amount of the fine, depending upon where you fall on the scale, and I guess we could permit an upward departure, but even that would be limited by whatever the statute provides, if it does provide a ceiling on fines. And that's why I started my argument in terms of separating the guidelines from punishment to restitution. But I need some help from you, if you can, with regard to my more general philosophical question, and that is in criminal cases where we are dealing with an appropriate punishment, whatever we call it, whether it's a fine, incarceration, or restitution, why doesn't a federal judge have the inherent authority to take away from a convicted defendant the proceeds of his illegal activities? I don't find a case that allows the court to do that, but if the court wanted to do that, I guess the court in its inherent power could do that, but it's going to have to do it a little bit more carefully than the trial court in this case. When the court made assumptions about, well, something must have been lost, the court could have taken the time, the probation department or the government could have taken the time to structure where this ill-gotten gain came from. For example, if somebody comes to you and says, here's $25,000, and I want you to name a park after me, and somehow a vote is passed, and the George Washington Park is no longer called that, it's called the Nick DePento Park, there is no, I think, inherent power in the court to say, give up that money from the standpoint that you need to pay restitution to the city, I'm going to punish you, I'm going to fine you, I'm going to take whatever I can, but in this case, the vehicle of restitution was the improper way, and that's what it has to be. Mr. DePento, it seems to me what the government has lost is the honest service of its public official, and we're trying to find a measure for that loss. And I would have thought that you turn to the elementary law of agency, that what an agent takes in the way of a bribe belongs to its principal, because it's a pretty good measure of what the principal is losing. A willing bribe giver was willing to pay this amount of money to the agent to secure his dishonest service, and that's a perfectly obvious measure of what the bribe giver thought the service was worth and what the principal was losing. My response to that is a public official is not an agent, cannot be considered... Why not? I don't find... Where do you get that law? In terms of employee, employer trust, it's a trust situation, and that trust... That's ridiculous, I mean... I'm just talking about the case... Law of agency applies throughout the whole legal world, as far as I know. You think public officials are not agents? Correct. Where do you get that? Do you have some case on that? I read the California Labor Code... Oh, the... What does it say? Well, it's the argument that the government is trying to use, which they didn't use at the time of sentencing and which is improper to do that, but they're trying to use the theory of restitution, citing California Labor Code 2860, that an employee who receives outside compensation for doing his job holds that compensation and trust for his employer. Sure, that's elementary agency law. This theory of restitution, however, was not proffered to the district court, and it's inappropriate to inject it into this appellate proceedings. But should the court decide to address the issue, we've found no California case applying the statute in the context of an elected public official, and the government cites none, Your Honor. And as noted in our reply brief, the relationship between a public official and the public entity is not regarded as that of an employee-employee relationship. Counsel, how do you account for the definition in Labor Code Section 3351, which includes all elected and appointed paid public officers as employees? But isn't that a statutory creation? The attempt to apply the Labor Code 2860 to public officials is going to, I believe, incur litigation regarding what we see the things of value are in the course of public duties because I think it's a California question. But how do you get around the fact that the California legislature has defined elected officials as employees of the entities? How do you get around that? I don't get around the phrase, but I get around the fact that no case in California establishes that trust situation between employee-employer to a public official. Does a case have to do it if the legislation does it? Well, you're taking a statutory measure or interpretation from California and trying to make a decision under federal law, and I don't believe the federal court has allowed it. Even in a case where the defendant has used his position as a California elected official to violate federal law, what's wrong with looking to the California statute in order to determine the appropriate punishment to redress his abuse of office? But you're attempting to use the Labor Code to a public official, and if the definition makes the public official an employee, then you're using a California interpretation of a statute or the statute itself for your ability to order restitution, and I believe that's... We use state law all the time in all sorts of different cases in order to determine what remedies to apply. Why shouldn't that... Going back to the question I initially asked you, why shouldn't we do that here? The California legislature, as Judge Rollinson points out, has clearly declared by statute as a matter of public policy in this state that public officials are in fact employees, and we've got another statute that says employees basically take this money and it belongs to their employers. What's wrong with looking to California law in the context of sentencing and ordering him to give that money to the city? I guess in terms of the definition of the loss or what we have in this case, there was no proven loss to the city of Colton from the standpoint that there is no evidence of any lack of competitive bidding. There is no disgorgement of any funds coming from the city. From the other point of view, which is that if it was worth it to the payor of the bribe to give him this sum of money in order to obtain permission to bill, then that is the value of the illegal services that he provided. I don't think that the cases cited by the government, Gamatek and or Vajela, support that. You can make the assumption, but you have to have proof that backs up the assumption. You're not maintaining that he has a right as a public official to take even a dollar to influence his official action, are you? Absolutely not. So I guess we're back where we began, which is what's wrong with asking him to turn that money over to the city that he served? Because you cannot call it restitution. Well, when I was pressing the same line of questions, you sort of went off in the labor code. But let's get back to fundamental agency. Why isn't that a perfectly appropriate measure of the loss? Honest service to the city was lost. How do we find the value? Why isn't this a good way of finding the value? You say there's no case. We'll make the law. I understand that. But honest services of government, how do you define that in terms of a payback to the city of Colton? They didn't lose anything. Look at what the briber was willing to pay. He was willing to pay this to get dishonest service. But that doesn't mean, that doesn't jump then to that there was some contract that was higher than some competitive bidder, that there was some money. The honest service was, the dishonest service was worth this much, and it belongs to the city. Well, the defendant then should be punished in some way. But my three examples, the government official has paid $25,000 to name a park after him or someone. There's no loss to the city. $25,000 is to vote for redevelopment project. The project is advantageous. It's the cheapest. It's the best of all submitted. There's still no loss to the city. But even in your hypotheticals, you would agree that he didn't have the right to receive even the first dollar of the $25,000. Correct, and therefore he should be punished. Maybe the guidelines should be changed in some other way. Why should I even include telling him to give that money to the city rather than to keep it for himself, regardless of what we call it? Well, cases I presume can be remanded under the theory that there's no loss to the city, but I'm going to disgorge you of the $60,000 that you took over a period of time. So I'm going to give it to the city or to the boys club or something, or I'm just going to fine you for that amount and give it to the government because we don't want corrupt officials working for us. Well, it seems to me your mistake is thinking that there's no loss to the city when an official behaves dishonestly. Of course there is. There's the loss of the honest service, whatever the substantive result. How do you measure that loss? In terms of corruption? How do you measure the loss of honest service? I don't think you can. You don't think you can measure it? Other than you measure it indirectly by the loss of distrust that the people have and that better city officials, better elected officials. Well, that's one way to measure it. But another way is to say, well, this bribe giver was willing to pay for it, and this is what it was worth to him. And the bribe givers were also punished in this case, entered pleas and were punished. And, therefore, there's another viable source to get money. Well, you don't give the bribe back to the bribe giver. You don't let the bribee keep it. So it has to go to the principal. If it's in the form of restitution, I can't answer that because it's not. I'm just addressing that issue. I understand your argument. Thank you. Thank you. We'll hear from Mr. Morton. Good morning, Your Honors. Edward Morton representing the United States. As the mayor of Colton, the defendant owed his services to the city and its citizens. And when he accepted bribes in exchange for exercising his duty and providing those services in a particular way, the defendant essentially traded his services for money, to which the people of Colton and not the defendant should be entitled. You know, looked at another way, and I know that the discussion that's already occurred has looked at it this way. The bribe payer received benefits from the city in the form of what he wanted done by the city in exchange for the bribe payments for projects that he was developing in the city. And there was a value placed upon those services. That was the value determined by the bribe payer and the mayor, the bribe receiver. And the cases tell us that in fashioning restitution orders, courts can use common sense, practical ways to come up with a reasonable approximation of the amount of restitution. And the government would certainly suggest that the value that was placed on the two people involved in the transaction, the bribe payer and the bribee, is a good reasonable approximation. Did you make this argument below? Yes, we did, Your Honor. Okay. And what was the – how did you – who in the record did you make this particular argument that you're making? Well, we relied upon the Vaghella case and the Goodrich case, both of which take the – the Vaghella case in particular, which takes the position that in fashioning a restitution order, the court can assume that when the person receiving the bribes did something to benefit the bribe payer, even though you can't calculate after the fact exactly the benefit that may have gone to the bribe payer in amounts of different – different amounts that were paid to the employer, that the court can assume that there was a difference in value and that the amounts of the bribes or kickbacks in that case is a – is the amount that can be assumed to have been the difference. I thought your argument below was that the city lost something and you were trying to measure what the city had lost in terms of money to the city. I don't recall you making a particular argument that the bribe giver and the bribe taker had really valued the amount of the loss by the amount of the bribe. Did you make that specific argument below? Well, we specifically relied upon the Vaghella case. But I'm asking you, did you articulate the argument in the same way that you are this morning? To tell you the truth, I can't – I can't – I can't recall whether I articulated it precisely that same way, but certainly the notion that it can be assumed that there is a difference based upon the value of the bribe was articulated. If we assume that you did not articulate it precisely the same way, are you precluded now from making that argument? No, Your Honor. My understanding would be that the court can hold the restitution order based on anything within the – any grounds within the record, whether or not that specific legal argument was made in the – in the district court. The – in short, Your Honors, the defendant illegally gained money in exchange for exercising his official duty as an agent, as an employee, as an official of the city of Colton. He shouldn't be able to keep that money. The money should go to the people who owned those services or the entity who owned those services, the city of Colton, services that he gave away. In a commercial context, these – these – these development agreements involving the city of Colton's redevelopment agency and the city should be compensated for what the defendant gave away. Unless the court has any further questions, that will conclude my remarks. Thank you. The case just argued is ordered submitted.
judges: Noonan, Tallman, Rawlinson